UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BARBARA SUITER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:11cv199SNLJ |
| ) | |
| GENERAL BAPTIST NURSING HOME, ) | |
| A Missouri Non-Profit Corporation. ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This is an employment discrimination case brought under Title I of the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 623, *et seq.*, and the Missouri Human Rights Act ("MHRA") Section 213.010 R.S.Mo. *et seq*.  This matter is before the Court on defendant's Motion for Summary Judgment (#18), filed November 15, 2012.  After an extended briefing schedule, this matter is now ripe for disposition.

**I.     Background**

Plaintiff Barbara Suiter worked for defendant General Baptist Nursing Home's dietary department for 22 years. During that time, plaintiff received very good evaluations, and there were never problems with the quality or quantity of her work, her dependability, or her honesty. Plaintiff's supervisor switched plaintiff from a cook to a cook's helper in 2004; during that same year, she was moved from a full-time schedule to part-time.  Following plaintiff's shift on February 25, 2011, however, defendant decided not to put plaintiff on the March 1, 2011 work schedule.  Plaintiff was the only person who was not re-scheduled to work on the March 1 schedule.  At the time, she was 68 years old.

Defendant explains that its resident census was down from January to February 2011, from 80 patients to 68 patients. Defendant thus sought to "streamline" the kitchen and cut down on kitchen employees by reducing part-time employee. Defendant states that plaintiff was the only part-time employee among "cooks' helpers and dietary aides," thus she was left off the schedule. Defendant states that it reduced the dietary department's employee hours from 1,080 hours in February to 855 hours by June 2011. Payroll decreased from $8,894 to $6,529 over the same period. Similarly, the defendant's average cost per hour for February 2011 was $7.88; average cost per hour by March 14 was $7.79; through the end of 2011, the defendant's average per hour cost fluctuated between $7.76 and $8.26.

Plaintiff's hourly wage was $10.75 per hour on her last day of work. The worker who took over her job duties was a 27-year-old woman who worked full time and was paid $7.25 per hour. Plaintiff also points out that defendant hired seven new employees between March 1 and the middle of June 2011. Each of the new employees was younger than plaintiff; the new employees' years of birth ranged from 1971 to 1992. Plaintiff states that defendant increased the hours of a younger, male worker named Joe Brown, but defendant counters that Mr. Brown was a full-time employee, not a part-time employee. Finally, two of plaintiff's former coworkers testified at their depositions that they believed defendant fired its older workers in favor of younger workers, but defendant suggests those employees bore a grudge against their employer. Plaintiff filed this action against the defendant, contending that the defendant stopped employing her because it wanted to replace her with younger, cheaper labor.

## II. Legal Standard

"Summary judgment should seldom be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct

2

evidence." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. 2007); *see also Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000); *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir. 1998). "Summary judgment should not be granted unless evidence could not support any reasonable inference for the non-movant." 231 S.W.3d at 818. Indeed, for the plaintiff to survive summary judgment, the record must show "two plausible, but contradictory, accounts of the essential facts" and that "the 'genuine issue' in the case is real, not merely argumentative, imaginary, or frivolous." *Id.* at 820.

Pursuant to Rule 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

3

**III.    Discussion**

Under the ADEA, it is "unlawful for an employer...to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

There has been some confusion surrounding ADEA cases due to the emergence of different standards for ADEA cases versus Title VII cases.  Cases alleging discrimination based on race, sex, religion, color, or national origin are brought under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended 42 U.S.C. § 2000e, et seq.  "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor."  *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 174 (2009).  The Supreme Court thus held that, unlike Title VII, the ADEA does not authorize a "mixed motives age discrimination claim." *Id.* at 175.  Thus, a "plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Id.* at 177-78.

"A plaintiff may establish her claim of intentional age discrimination through either direct evidence or indirect evidence." *King v. United States*, 553 F.3d 1156, 1160 (8th Cir. 2008), cited in *Tusing v. Des Moines Independent Community School Dist.*, 639 F.3d 507, 515 (8th Cir. 2011).  As for ADEA cases involving indirect evidence, the Supreme Court in *Gross* noted that it had "not definitively decided whether the evidentiary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 702 (1973), utilized in Title VII cases is appropriate in the ADEA context."  557 U.S. at 181 n.2.  However, in the absence of clear Supreme Court precedent, this Court is bound to follow Eighth Circuit precedent, and the Eighth Circuit has continued to applied the burden-

4

shifting *McDonnell Douglas* evidentiary framework in ADEA cases involving indirect evidence. *Tusing*, 639 F.3d at 515.

Plaintiff contends that she has direct evidence of discrimination. This Court disagrees that her evidence is "direct." "Direct evidence may include employer remarks that reflect a discriminatory attitude or that demonstrate a discriminatory animus in the decisional process." *Kneibert v. Thomson Newspapers, Michigan Inc.*, 129 F.3d 444, 452 (8th Cir. 1997) (internal citation and quotation omitted). Plaintiff's evidence includes no employer statements or other direct, employer-based evidence of a discriminatory attitude or animus. The Court will thus proceed using the burden-shifting *McDonnell Douglas* evidentiary framework.

"Under the *McDonnell Douglas* analysis, the plaintiff has the initial burden to establish a prima facie case of age discrimination." 639 F.3d at 515 (citing 411 U.S. at 1162). If the plaintiff meets that initial burden, the burden of production shifts to the employer, who must "articulate a legitimate non-discriminatory reason for its employment action." *Id.* Finally, "[t]he burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the stated non-discriminatory rationale was a mere pretext for discrimination." *Id.*

To establish a prima facie case of age discrimination, plaintiff must show that (1) she is a member of a protected group; (2) she was performing her job at a level that met her employer's legitimate expectations; (4) she was discharged; and (4) her employer replaced her with a younger person. *Calder v. TCI Cablevision of Missouri, Inc.*, 298 F.3d 723, 729 (8th Cir. 2002). That plaintiff has made a prima facie showing is not seriously disputed. Defendant weakly argues that plaintiff was not truly discharged, but defendant admits that plaintiff was "left off the schedule" and that afterwards, a younger employee performed plaintiff's duties.

Turning then, to step two of the *McDonnell Douglas* framework, defendant insists that its reasons for leaving plaintiff off the March 1 schedule were non-discriminatory, i.e., it replaced part-time dietary workers (like plaintiff) with full-time workers to cut costs in the face of a reduced patient census.  Defendant cites as evidence its patient census, its reduced number of employee hours worked, and its reduced labor costs for the dietary department for January through June 2011.

Plaintiff, moving to step three of the *McDonnell Douglas* framework, counters that defendant's explanation is pure pretext.  Plaintiff points out that defendant — without warning or discussion — simply left her off the March 1 schedule and then proceeded to hire seven new employees for the dietary department.  Plaintiff further points out that all seven of those new hires were younger (much younger) than plaintiff, and that defendant quickly terminated several of those employees, but still defendant did not inquire with plaintiff as to whether she wanted to work.

Defendant explains that it intended for those new hires to be full-time employees.  In its brief, defendant contends that its "legitimate business goal" was to "reduce the number of employees and hours worked in the dietary department by using existing, full time positions to perform the same duties previously performed by part-time employees."  However, using full-time employees to do the work of part-time employees makes logical sense only where the defendant is already employing the full-time workers.  Hiring new, new, additional full-time workers to do the work of existing part-time workers defies logic.  In addition, at least one of the seven new hires, Chelsea Robards, was a *part-time* worker in April 2011.   Plaintiff also set forth evidence of former fellow employees who believed that the defendant was set on firing its older workers and replacing them with younger workers.

6

Because this is a summary judgment motion, this Court must review the facts in a light most favorable to plaintiff and give her the benefit of any inferences that logically can be drawn from those facts. *Buller*, 706 F.2d at 846. In addition, the court is required to resolve all conflicts of evidence in favor of plaintiff. *Robert Johnson Grain Co.*, 541 F.2d at 210. Thus, the plaintiff must be given the benefit of the "holes" in defendant's story — it says that it was attempting to lower costs, but it hired new workers rather than use its existing (already trained) staff; it said it hired only full-time workers, but at least one new worker was part-time (like plaintiff). The Court cannot grant summary judgment to defendant on plaintiff's ADEA claim under these circumstances. And, because defendant rests upon the same grounds in arguing for summary judgment on plaintiff's MHRA claim, the Court reaches the same result on plaintiff's MHRA claim.

### D. Conclusion

Plaintiff has shown that disputed issues of fact exist as to whether defendant based its employment decision regarding plaintiff on account of her age. Summary judgment will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (#18) is **DENIED.**

Dated this   22nd   day of February, 2013.

_____
UNITED STATES DISTRICT JUDGE

7